IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY DON MAYNARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 96-CV-559-GKF-SAJ |
| ) | |
| SHARON CASEBOLT; et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

On June 21, 1996, plaintiff Larry Don Maynard ("Maynard"), a state prisoner appearing *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983, against Sharon Casebolt and Renee Swope, Court Clerks for the Osage County District Court; Denise Cale, a Court Reporter for the Osage County District Court; and J. R. Pearman, Osage County District Court Judge. The case has been remanded twice by the Tenth Circuit Court of Appeals. The first remand occurred in 1997.[1] In a second remand Order, filed July 20, 2000 (Dkt. # 81), the Tenth Circuit dismissed defendant Pearman based on absolute judicial immunity, affirmed the dismissal of Maynard's claim that defendants conspired to deprive him of the records and transcripts necessary to appeal his 1991 conviction based on Heck v. Humphrey, 512 U.S. 477 (1994), and remanded for further consideration of Maynard's claim that defendants' failure to timely provide him with the necessary

---

[1]In an Order filed July 24, 1996, this Court found that Maynard's claims accrued no later than January 31, 1994, when the period to prosecute his appeal expired, and that his Complaint, filed June 21, 1996, was barred by the two-year statute of limitations. See Okla. Stat. Ann. tit. 12, § 95(3); Meade v. Grubbs, 841 F.2d 1512, 1523 (10th Cir. 1988). Pursuant to 28 U.S.C. § 1915A, the "screening" provision added by the Prison Litigation Reform Act of 1995 ("PLRA"), this Court dismissed the complaint as frivolous, finding that it lacked an arguable basis in law. Maynard appealed. On May 19, 1997, the Tenth Circuit Court of Appeals reversed and remanded, finding that the limitations period may have been tolled due to Maynard's long history of mental illness, a legal disability recognized by Oklahoma law. See Dkt. # 16 (citing Okla. Stat. Ann. tit. 12, § 96; Walker v. Pacific Basin Trading Co., 536 F.2d 344, 347 (10th Cir. 1976)).

records and transcripts constituted an independent due process violation because of the inordinate delay in having his appeal decided. In his complaint, Maynard seeks "compensatory damages in the amount of $1,000,000.00 and punitive damages in the amount of $10,000,000.00 from each defendant . . . in their 'personal individual capacities,' for their individual bad-faith, reckless and callous indifference, for the emotional distress, mental injuries, and the denial of the su[b]stantive procedural rights violated by each of them." (Dkt. # 1 at 5).

## *BACKGROUND*

This case has a complicated procedural and factual history. Both this Court, see Dkt. # 33, and the Tenth Circuit, see Dkt. # 81, have set out the background and procedural history of this case. That history is repeated here, modified to include recent events.

On March 22, 1991, Maynard was convicted in Osage County District Court, Case No. CRF-88-27, of Shooting With Intent to Kill. After entering judgment in Maynard's criminal case, the state district court granted Maynard leave to proceed *pro se* on direct appeal. Maynard states that after being granted a series of extensions of time, the trial court record and transcripts were due in the Oklahoma Court of Criminal Appeals ("OCCA") on January 31, 1994. On October 19, 1994, the OCCA dismissed the appeal because it had not been timely perfected in accordance with Rule 3.4, *Rules of the Court of Criminal Appeals*, 22 O.S. Supp. 1989, Ch. 18, App.

In the instant complaint, Maynard alleges that after his 1991 conviction and sentencing in Osage County District Court, defendants conspired in violation of his civil rights to interfere with the perfection of his direct appeal by failing to provide all of the trial documents he needed to prepare his appeal. Maynard claims that he is entitled to recover money damages because of the appellate delay caused by defendants' failure to provide the record he requested in a timely manner.

He emphatically states that he does not contest the validity of his conviction. See Dkt. #s 105 at 8, and 113 at 2, 10. Specifically, Maynard complains that defendants failed to provide three (3) transcripts and one (1) motion resulting in the dismissal of his original direct appeal. Maynard identifies the missing documents as the following:

1. a transcript from a hearing held April 14, 1989, in Osage County District Court, Case Nos. CRF-87-189, CRF-87-190, CRF-3-88-27, on defendant's motion to dismiss,

2. a motion to resume criminal proceedings,[2] filed in Osage County District Court, Case Nos. CRF-87-190, CRF-87-189, and CRF-3-88-27, on September 25, 1989,

3. a transcript from a hearing held September 6, 1990, and

4. a transcript from the pretrial and motions hearing held January 25, 1991, in Osage County District Court, Case No. CRF-3-88-27.

See Dkt. # 2 at 5. The record reflects that Maynard received all four missing documents in September of 1994, at the latest. See Dkt. # 99, Ex. 4-6; Dkt. # 118, Ex. 3, 4. The OCCA dismissed Maynard's original direct appeal on October 19, 1994.

In September, 1997, or approximately three (3) years after receiving the missing documents, Maynard requested a direct appeal out of time. On February 17, 1998, the OCCA granted Maynard a direct appeal out of time. See Dkt. # 99, Ex. 7. On May 26, 1999, the OCCA remanded Maynard's case, in light of Cooper v. Oklahoma, 517 U.S. 348, 368-69 (1996), to determine the feasibility of a retrospective post-examination competency hearing and to conduct such hearing, if feasible. On August 27, 1999, the district court determined that a retrospective hearing was feasible. The hearing was held on December 7, 1999. The jury determined that Maynard failed to demonstrate by a

---

[2]The record indicates that a representative from the Office of the District Attorney of Osage County reviewed the trial court records and discovered that the original motion together with an attachment were misfiled in another file which was referenced in the pleading. See Dkt. # 99, Ex. 6.

preponderance of the evidence that he was incompetent on September 4, 1990, the date of the original competency hearing. Maynard appealed to the OCCA from the retrospective hearing. The appeal was consolidated with the appeal out of time. On May 10, 2000, the OCCA concluded the direct appeal out of time by affirming Maynard's conviction. On June 2, 2000, the OCCA denied Maynard's petition for rehearing.

During the pendency of this civil rights matter, Maynard filed a petition for writ of habeas corpus, N.D. Okla. Case No. 01-CV-079-CVE-SAJ.[3] Because resolution of the remanded issue in this case was tied to the claims raised in the habeas petition, this action was stayed pending

---

[3]Maynard has in the past filed three (3) other petitions for writ of habeas corpus, each challenging his conviction in Osage County District Court, Case No. CRF-88-27, and one (1) other civil rights action arising from events surrounding the conviction. Maynard's first habeas petition, Case No. 93-CV-494-E, was dismissed without prejudice for failure to exhaust state remedies on November 26, 1993. Maynard's second habeas petition, Case No. 94-CV-691-K, was dismissed without prejudice, on February 13, 1995, on Maynard's own motion due to his mental incompetency and resulting incarceration in the Mental Health Unit at Joseph Harp Correctional Center. Maynard's third habeas petition, Case No. 95-CV-952-B, was dismissed without prejudice for failure to exhaust state remedies on June 13, 1996.

Maynard has also previously sought money damages in a civil rights action filed in this Court on July 21, 1994, Case No. 94-CV-707-K. In that action, Maynard sued J. R. Pearman, William H. Mattingly, and David Gambil, Osage County District Court Judges; Larry D. Stuart, Osage County District Attorney; Warren L. Smith, Doctor at Eastern State Hospital; Sharon Casebolt and Renee Swope, Court Clerks at Osage County District Court; Merrell Tubbs and Denise Cale, court reporters for Osage County District Court; and Geoffrey M. StandingBear, court appointed counsel. Maynard claimed that those defendants conspired to find him competent to stand trial in Osage County District Court in violation of Okla. Stat. tit. 22, § 1175.2(C), although he had been determined to be incompetent to stand trial in Delaware County District Court. Maynard alleged that Delaware County, and not Osage County, had subject matter jurisdiction to redetermine his competency. Also, as in the instant case, Maynard alleged that certain defendants, including the four (4) named defendants in this case, engaged in a conspiracy to deprive him of counsel on direct appeal and to destroy, withhold, and delay the preparation and submission of a full record on appeal to the OCCA. Because a judgment in favor of Maynard on the lack of jurisdiction to determine competency issue would have necessarily implied the invalidity of Maynard's underlying conviction, see Heck v. Humphrey, 512 U.S. 477 (1994), the Court dismissed the case without prejudice.

4

resolution of the habeas corpus petition. See Dkt. # 95. The docket sheet for Case No. 01-CV-079-CVE-SAJ reflects that by Order entered April 29, 2005, Chief Judge Claire V. Eagan denied the habeas petition. See also Dkt. # 118, Ex. 10. Maynard appealed to the Tenth Circuit, where by Order filed October 26, 2006, the Circuit affirmed denial of the petition. The mandate was filed of record on December 14, 2006. Maynard filed a petition for writ of *certiorari* at the United States Supreme Court. That request was denied on March 19, 2007.

On December 18, 2006, following the Tenth Circuit's ruling affirming the denial of habeas corpus relief, this Court lifted the stay entered in this case. See Dkt. # 96. Defendants were ordered to file a status report advising the Court of any issue remaining for resolution and a proposed schedule, if warranted. Maynard was directed to file a response to the status report. See Dkt. # 96. Defendant Cale filed a status report (Dkt. # 99) and Maynard filed a response (Dkt. # 105). Defendants Casebolt and Swope filed a status report (Dkt. # 112) and Maynard filed a response (Dkt. # 113). Maynard has also filed a motion for appointment of counsel (Dkt. # 114). By Order filed June 12, 2008 (Dkt. # 117), the Court denied Maynard's motion for appointment of counsel and directed defendants to file motion(s) for summary judgment. Defendants complied with the Court's Order and filed motions for summary judgment (Dkt. ## 118, 119). Maynard has filed responses to the motions (Dkt. ## 126, 127). Defendant Cale filed a reply (Dkt. # 128). For the reasons discussed below, defendants' motions for summary judgment shall be granted.

### *DISCUSSION*

**A.     Appointment of guardian ad litem**

In its remand order, the Tenth Circuit directed that this Court "should consider whether an inquiry into Mr. Maynard's mental competency is warranted." See Dkt. # 81. Under Fed. R. Civ.

P. 17(c), "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." As discussed below, the Court finds that in light of the OCCA's disposition of Maynard's direct appeal out of time and this Court's adjudication of his federal habeas corpus petition,[4] Maynard has not shown and cannot show the existence of a genuine issue of material fact as to the lack of prejudice resulting from the appellate delay and he has not shown and cannot establish a due process violation. Therefore, defendants are entitled to entry of summary judgment and there is no need to inquire into Maynard's mental competency for the purpose of the appointment of a guardian ad litem.

**B.     Summary judgment standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). However, the mere existence of an alleged factual dispute

---

[4] The Court did appoint a guardian ad litem to protect Maynard's interests during the habeas corpus proceeding.

does not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250.

**C.    Inquiry under *DeLancy* and *Harris***

In remanding this matter for further proceedings, the Tenth Circuit directed this Court "to conduct the necessary inquiry under *Delancy* and *Harris*." (Dkt. # 81). At issue is Maynard's claim that defendants' excessive delay in furnishing requested transcripts and other records needed for the direct appeal of his conviction entered in Osage County District Court, Case No. CRF-88-27, constituted a deprivation of due process. Relying on Delancy v. Caldwell, 741 F.2d 1246, 1248 (10th Cir. 1984), and Harris v. Champion, 15 F.3d 1538, 1557 (10th Cir. 1994), the Tenth Circuit directed that four (4) factors are to be considered in determining whether an appellate delay constitutes a due process violation:

1)    the length of the delay,

2)    the reasons for the delay,

3)    whether the plaintiff asserted his right to a timely appeal, and

4)    whether the delay prejudiced the plaintiff by
    i)    causing him to suffer oppressive incarceration pending appeal,
    ii)   causing him to suffer constitutional anxiety and concern awaiting the outcome of his appeal, or
    iii)  impairing his grounds for appeal or his defenses in the event of a reversal and retrial.

Harris, 15 F.3d at 1558-59; Delancy, 741 F.2d at 1247-48. The four factors of this balancing test are related and should be considered together along with any other relevant circumstances. Harris, 15 F.3d at 1559 (citing Barker v. Wingo, 407 U.S. 514, 533 (1972)). The first factor, length of delay, is "a threshold that a petitioner must meet before the court need consider the other factors." Id. In addition, "a petitioner must make some showing on the fourth factor – prejudice – to establish a due process violation." Id. (citing United States v. Tucker, 8 F.3d 673, 676 (9th Cir. 1993) (en banc)). The Tenth Circuit noted that Maynard has satisfied the first and third factors, and the record, as developed at that time, provided no reason explaining the delay and was insufficient for an assessment of whether the delay prejudiced Maynard. See Dkt. # 81. The Court shall address the four factors in turn.

### 1. *Length of the delay*

In Harris, the Tenth Circuit established that "a two-year delay in finally adjudicating a direct criminal appeal ordinarily will give rise to a presumption of inordinate delay that will satisfy this first factor in the balancing test." Harris, 15 F.3d at 1560. As a result, the Tenth Circuit determined that in this case, "the three-year delay in providing the requested records and transcripts allegedly attributable to the defendants delayed resolution of Mr. Maynard's appeal until more than nine years after his conviction. This clearly qualifies as an inordinate delay capable of triggering due process concerns." See Dkt. # 81 at 9. Thus, Maynard has met the threshold for establishing a due process violation and the Court will assess and balance the other factors.

### 2. *Reason for the delay*

The next factor to be considered is the reason for the delay. As indicated above, Maynard focuses his complaint on defendants' failure to provide four (4) records, including three (3)

transcripts and one (1) motion, he needed to prepare his appellate brief. In requesting summary judgment, defendant Cale explains that she was the court reporter for only one of the hearings, specifically, the hearing held January 25, 1991, and that she does not remember Maynard making a "proper request" for the transcript. See Dkt. # 118, Ex. 11. She also indicates that Maynard did not designate the January 25, 1991, transcript in his Designation of Record filed on direct appeal. See Dkt. # 128, Ex. 2. Defendants Casebolt and Swope acknowledge the length of the delay, three and one-half years, but attribute their role in the delay to "simple negligence." See Dkt. # 119. In response to defendants' motions for summary judgment, Maynard provides a copy of a minute order, filed November 18, 1992, in Osage County District Court, Case No. CRF-88-27, directing that the "court reporters shall prepare transcripts of all hearings in this case and the Court Clerk shall forward copies of the same to defendant forthwith." See Dkt. # 126, Ex. 3. In spite of that ruling, however, Maynard did not receive all of the missing records until September, 1994.

Maynard alleges that the delay was the intended result of a conspiracy involving the defendants and Osage County District Attorney Larry Stuart, Judge Mattingly, and his court-appointed attorney, Geoffrey StandingBear. See Dkt. # 126. Maynard's allegation is purely speculative, and completely unsupported by any evidence. Significantly, in granting Maynard a direct appeal out of time, the OCCA wrote, "[we] find nothing in the record to support Petitioner's conspiracy claims, and find nothing to indicate that the district court withheld records from Petitioner." See Dkt. # 118, Ex. 7 at 6. The Tenth Circuit also ruled (Dkt. # 81) that this Court properly dismissed Maynard's conspiracy claim under Heck v. Humphrey, 512 U.S. 477 (1994).

All defendants assert that mere negligence does not support a request for relief under § 1983 for a due process violation. That is a correct statement of general constitutional law. See, e.g.,

9

Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (negligence insufficient to establish substantive or procedural violation of Due Process Clause); Jones v. Salt Lake County, 503 F.3d 1147, 1162-63 (10th Cir. 2007); Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992) ("The Supreme Court has made it clear that liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant. It cannot be predicated upon negligence.") (quotations and citations omitted). In this case, however, the Court is charged with considering defendants' asserted reason for their delay, mere negligence, as part of a balancing test. Mere negligence does not suffice to excuse the three (3) year delay in providing the records Maynard sought.[5] Although a closer call for defendant Cale, the Court finds that this factor weighs in favor of finding a due process violation.

### 3. Maynard's diligence in pursuing right to a timely appeal

In Harris, the Tenth Circuit counseled that "absent evidence that a petitioner affirmatively sought or caused delay in the adjudication of his or her appeal, this third factor should weigh in favor of finding a due process violation." Harris, 15 F.3d at 1563. In this matter, the Tenth Circuit determined that "Mr. Maynard filed timely and frequent requests and motions seeking the records and transcripts needed for his appeal." See Dkt. # 81 at 10.  Defendants Casebolt and Swope do not directly address this factor in their motion for summary judgment. See Dkt. # 119. As noted above, defendant Cale asserts that she had involvement with only one record Maynard requested and that he never "properly requested" transcription of the hearing nor did he include the transcript on his

---

[5]As defendants note, once Maynard finally received the transcripts and records, he waited more than three (3) years to seek an appeal out of time. While that observation may shift responsibility from defendants to Maynard for a portion of the nine (9) year delay in resolving the direct appeal, it does not diminish the significance of the three (3) year delay in providing the records which contributed to the OCCA's dismissal of the original direct appeal.

Designation of Record. See Dkt. #s 118, 128. As a result, she claims to have had no notice of his requests and that, therefore, the delay in producing the transcript from January 25, 1991, is attributable to Maynard. That argument, however, overlooks the considerable effort Maynard made to obtain the missing transcripts. The Court recognizes that Maynard's *pro se* status cannot provide an excuse for any failure to comply with the fundamental requirements imposed by state procedural rules. Cf. Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir.1994). Nonetheless, the failure to transcribe the January 25, 1991, hearing until September 9, 1994, even after entry of a court order on November 18, 1992, directing preparation of transcripts from all hearings, reflects the existence of a breakdown in communication among the Osage County District Court staff, including the defendants in this case. Under these facts, the Court cannot find that Maynard caused the delay in production of the records he sought. Therefore, this factor weighs in favor of finding a due process violation.

### *4. Prejudice suffered by Maynard*

To establish a due process violation, a plaintiff is ordinarily required to make some showing of prejudice. Harris, 15 F.3d at 1559. Prejudice may result from any of the following: (i) oppressive incarceration pending appeal; or (ii) constitutionally cognizable anxiety awaiting resolution of the appeal; or (iii) impairment of either a defendant's grounds for appeal or his defenses in the event of a retrial. Id. at 1563. Significantly, a plaintiff cannot show impairment of an ability to mount a defense on retrial, constitutionally cognizable anxiety, or oppressive incarceration if his delayed appeal is ultimately found to be without merit. Id. at 1564-65.

As indicated above, the OCCA granted Maynard a direct appeal out of time and remanded his case, in light of Cooper v. Oklahoma, 517 U.S. 348, 368-69 (1996), to determine the feasibility

of a retrospective post-examination competency hearing and to conduct such hearing, if feasible. On remand, the district court determined that a retrospective hearing was feasible and held such a hearing on December 7, 1999. The jury empaneled to hear the matter determined that Maynard failed to demonstrate by a preponderance of the evidence that he was incompetent on September 4, 1990, the date of the original competency hearing. The OCCA subsequently concluded the direct appeal by affirming Maynard's conviction.

As previously noted, on February 2, 2001, Maynard filed a petition for writ of habeas corpus in this Court, N.D. Okla. Case No. 01-CV-079-CVE. This civil rights action was stayed pending resolution of the habeas petition. In the habeas action, the Court appointed both counsel and a guardian ad litem for Maynard's protection. By Order filed April 29, 2005, the Court denied the petition. In denying habeas corpus relief, see Dkt. # 118, Ex. 10, the Court determined that Maynard's 1999 retrospective post-examination competency hearing was valid. Even though nine (9) years had passed since the original competency hearing held in 1990, Maynard's medical records were available, his testimony was read into the record, and all witnesses were present and testified at the 1999 retrospective hearing. The Tenth Circuit recognized that "the availability of contemporaneous evidence was substantial," and affirmed the denial of habeas corpus relief on October 26, 2006. Maynard v. Boone, 468 F.3d 665, 675 (10th Cir. 2006). The United States Supreme Court denied *certiorari* on March 19, 2007. After issuance of the Tenth Circuit's mandate, the Court lifted the stay imposed in this action.

In light of the record developed since the Tenth Circuit's remand, the Court finds that Maynard has failed to demonstrate that he suffered prejudice as a result of the delay in his direct appeal proceedings. First, because the OCCA affirmed his conviction at the conclusion of the direct

appeal out of time, Maynard cannot show impairment of the ability to mount a defense on retrial, constitutionally cognizable anxiety, or oppressive incarceration. Harris, 15 F.3d at 1564-65. The only remaining question is whether the delay impaired his grounds for appeal. In other words, in order to succeed on his due process claim, Maynard must demonstrate that there was a colorable ground for appeal that was lost or impaired because of the delay.

In this action, Maynard makes no argument and presents no evidence suggesting that the passage of time impacted the availability of witnesses or evidence resulting in an impairment to his grounds for appeal. In fact, as stated above, Maynard continues to assert his conspiracy theory and states that he does not contest his conviction. During the long pendency of this action, the OCCA affirmed Maynard's conviction on direct appeal and this Court denied habeas corpus relief. The Tenth Circuit affirmed the denial of the habeas petition, and the United States Supreme Court denied Maynard's petition for a writ of *certiorari*. During his direct appeal in state court and his habeas action in this Court, Maynard never asserted that the delay impaired a ground for appeal or that a colorable ground for appeal had been lost because of the delay in adjudicating his direct appeal. For example, he never claimed that the passage of time made it more difficult for the court reporter to transcribe accurately the notes taken, see Harris, 15 F.3d at 1563 n.15 (citing Rheuark v. Shaw, 628 F.2d 297, 303 n.8 (5th Cir. 1980)), or that evidence or testimony had been lost. Therefore, upon consideration of the fourth factor, the Court finds Maynard has failed to demonstrate that he suffered prejudice due to defendants' delay in providing records for his appeal. In the absence of prejudice, Maynard has failed to demonstrate a violation of due process.

**D. Conclusion**

Based on the summary judgment record, the Court finds there is no genuine issue of material

fact for trial concerning the existence of prejudice to Maynard resulting from the delay in appellate proceedings. In the absence of prejudice, the Court finds that no due process violation resulted from the delay. As a result, defendants are entitled to entry of summary judgment on Maynard's claim that defendants' failure to provide in a timely manner the necessary records and transcripts constituted an independent due process violation because of the inordinate delay in having his appeal decided.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendants' motions for summary judgment (Dkt. #s 118 and 119) are **granted**.
2. A separate judgment shall be entered in this matter.

DATED THIS 15th day of September, 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma